947 So.2d 972 (2006)
Edmond Allen JENKINS, Appellant
v.
TERRY INVESTMENTS, LLC, Appellee.
No. 2004-CP-01939-COA.
Court of Appeals of Mississippi.
May 9, 2006.
Rehearing Denied September 26, 2006.
*974 Edmond Allen Jenkins, Sr., Appellant, pro se.
John T. Armstrong, Jr., Hazlehurst, attorney for appellee.
Before MYERS, P.J., CHANDLER and GRIFFIS, JJ.
GRIFFIS, J., for the Court.
¶ 1. Edmond Allen Jenkins and Terry Investments, LLC, own neighboring tracts of land, fronting New Zion Road in Copiah County. Terry Investments sued Jenkins and alleged that he tore down and stole the boundary fence and trespassed onto its land. Jenkins admitted he tore down the fence but claimed he owned some of the property held by Terry Investments. Chancellor George Ward ruled in favor of Terry Investments, permanently enjoined Jenkins from trespassing, and ordered him to pay for the fence and Terry Investments's attorney fees. Jenkins appealed and assigned the following errors: (1) whether the trial court erred in ruling the enumerated claims for relief under M.R.C.P. 60(b) are mutually exclusive, (2) whether Jenkins's admissions negate equitable considerations, (3) whether the court erred in ruling that his application for relief from judgment was untimely, (4) whether the trial court erred in not admitting evidence that Jenkins was defrauded, (5) whether the trial court erred in determining the boundaries of Jenkins's property, and (6) whether the trial court erred in questioning Jenkins on the stand. We find that res judicata applies to this case, and therefore, we affirm.

FACTS
¶ 2. This case is the fourth appeal to this Court where the issue concerns Jenkins and the property in question. See Jenkins v. Jenkins, 829 So.2d 710 (Miss.Ct.App. 2002) ("Jenkins III"); Jenkins v. Jenkins, 757 So.2d 339 (Miss.Ct.App.2000) ("Jenkins II"); and Jenkins v. Jenkins, 691 So.2d 1034 (Miss.Ct.App.1996) ("Jenkins I"). We incorporate by reference the facts as set out in our three prior opinions. Nevertheless, we provide a brief synopsis of the facts.
*975 ¶ 3. The separate tracts of property held by Jenkins and Terry Investments were once a single parcel of land held by Jenkins's grandfather, Jesse Allen Jenkins ("Jesse"). During Jesse's life, he sold five acres in the southwest corner of the property to his son Cecil, Jenkins's father. Jenkins became the owner of Cecil's five acres in 1979. The remainder of Jesse's land passed intestate to his heirs, which included Jenkins, Eldon Jenkins, Earl Jenkins, Lavelle McRee, Alice Thompson, Edmund Burke Jenkins, Jr., Robert Jenkins, Francis Simmons, Shirley Sessions, Sara Ann White, Henrietta Buckley, and Dilly Jenkins.
¶ 4. In 1992, Jenkins and his wife Donna were sued by Jesse's other heirs. The other heirs asked the court to partition Jenkins's share of the property. On May 6, 1993, all parties signed an agreed order that the property to be partitioned was 219 acres and that commissioners would divide the property. The order provided that the only property not subject to partition was the five acres claimed separately by Jenkins. By order dated May 9, 1994, Jenkins was given one-sixth (1/6) of the partited land (or 36.5 acres). Jenkins's portion of the property was located at the southwest corner so that it would be contiguous with the five acres he already owned. Jesse's other heirs were awarded the remainder.
¶ 5. Jenkins was ordered to remove his deer camp from the northeast section of the property within thirty days. However, Jenkins wanted the northeast section of the property rather than what was given him. Jenkins appealed the order and claimed that the commissioners failed to properly inspect the property and take into account his improvements to the land. This Court affirmed the chancellor's order in an unpublished opinion, dated August 6, 1996, and held that Jenkins's arguments were waived by virtue of the agreed order. Thereafter, the supreme court denied certiorari.
¶ 6. Jenkins failed to move his deer camp. Hence, Jesse's other heirs sued him and Donna and asked that they be held in contempt of court. A few months later, Jenkins commissioned his own survey and filed a complaint for relief under M.R.C.P. Rule 60(b). Jenkins claimed to have found new evidence that his original plot was not five acres, but seventeen acres, and therefore twelve acres of his property were unlawfully partited in the 1994 judgment. To support his argument, Jenkins pointed to the call in the deed which stated "5 acres more or less." Jenkins claimed that the word "more" meant "twelve more." Although Jenkins began to reside on the five acre tract in 1979, this was the first time that Jenkins claimed that he owned more than that five acres. Jenkins's complaint was denied. We affirmed the chancellor's decision in Jenkins II, where we held that Jenkins's Rule 60 motion was untimely and frivolous. This Court awarded the statutory penalty in our mandate.
¶ 7. Thereafter, Jesse's other heirs filed a lawsuit to recover the statutory penalty and were so awarded. Jenkins appealed for a third time and argued that the chancery court had no authority to assess the statutory penalty. We affirmed the chancellor in Jenkins III.
¶ 8. Jesse's other heirs sold a portion of their property to Terry Investments. The property conveyed adjoined Jenkins's property. Jenkins painted a white line some three hundred feet onto Terry Investments's property, which caused Terry Investments to erect the fence in the wrong spot. After the property was surveyed, in accordance with the 1994 partition judgment, Terry Investments erected boundary markers that were destroyed by *976 Jenkins. Terry Investments then erected a boundary fence, because hunters from Jenkins's property continued to trespass. Jenkins was present when the fence was erected and threatened to tear it down if Terry Investments put it up. Jenkins carried through on his threat, not only tearing down the fence, but secreting all remnants of it. Jenkins allegedly scared off a potential buyer and told Charles Renfrow, Terry Investments's president, that he would keep the boundary dispute tied up so that Terry Investments could never sell its property.
¶ 9. When a lawsuit was filed, Jenkins again asked the court for relief from the 1994 judgment. Despite this Court's previous rulings, Chancellor Ward allowed Jenkins to be heard. Jenkins offered evidence that he originally owned seventeen acres. The chancellor then denied Jenkins's motion on its merits. The chancellor declined to assess punitive damages against Jenkins, but he did assess actual damages and attorney fees against Jenkins. Jenkins now, once again, appeals to this Court. He asks for relief under Rule 60 and makes a number of irrelevant and unsubstantiated allegations.

ANALYSIS
I. Did the trial court err in ruling the enumerated claims for relief under Rule 60(b) are mutually exclusive?
II. Did Jenkins's admissions negate equitable considerations?
III. Was Jenkins's application for relief from judgment untimely?
IV. Should the trial court have admitted evidence that Jenkins was defrauded into signing the Agreed Order?
¶ 10. Since all of these arguments go to the question of whether Jenkins should have been granted relief from the 1994 judgment under Rule 60(b), we will consider them together.
¶ 11. Jenkins argues that he should have been allowed to put on evidence that he was entitled to relief from the 1994 judgment. He claims that the chancellor held that his motion was untimely and, therefore, would not let him put on this evidence. We fail to see the merit in this argument. Chancellor Ward was very patient and courteous to Jenkins. The chancellor could have, quite properly, dismissed Jenkins's allegations as a procedural matter. Instead, the chancellor allowed Jenkins to present the evidence that he considered necessary to establish his claim for Rule 60 relief. This Court has previously held that Jenkins's claim, under Rule 60(b), was untimely when it was first made in 1997. Jenkins II, 757 So.2d at 345(¶ 16). We find no reason to reach a different result.
¶ 12. Despite our prior mandate to the contrary, Jenkins was granted a new trial on where the boundary line lay. The chancellor made extensive findings and ruled that Jenkins originally owned five acres, instead of seventeen, and thus, the 1994 partition judgment was proper. The chancellor went on to say:
Now, I think what you wanted more than anything, Mr. Jenkins, was to have somebody listen to you and listen to your position on those deeds, and I've done that. I don't think I had to. I think Mr. Armstrong [Terry Investments's attorney] had every legal right to assert affirmative matters which he has raised of res judicata and estoppel. These issues have already been tried and determined.
But I ignored those legal issues to give you the opportunity to be heard, and I listened, and I looked at those deeds, *977 and I looked at the survey, and there is no question in my mind you don't own that land, but I'm giving you the benefit of the doubt that you sincerely believed you might have a claim.
¶ 13. We find that this issue is without merit.
V. Did the trial court err in determining the Jenkins/Terry Investments boundary line?
¶ 14. Jenkins next faults the chancellor for incorrectly determining the Jenkins/Terry Investments boundary line. Specifically, he says that the chancellor erred in depending on the survey relied upon in the 1994 judgment, because that survey ignored the monuments as described in the deed. Terry Investments argues that Jenkins had no authority to reopen the 1994 judgment as this Court has already rejected an identical prior motion. In the alternative, Terry Investments argues that the chancellor was correct to affirm the boundary line as established by the 1994 partition decree.
¶ 15. We give a chancellor's findings of fact deferential treatment and subject them to the manifest error/substantial evidence standard. Russell v. Performance Toyota, Inc., 826 So.2d 719, 721(¶ 5) (Miss.2002). However, we conduct a de novo review of legal questions. Id.
¶ 16. The chancellor found a discrepancy between the monuments set out in the deed versus the call of the deed and the distances listed in it. If one follows the monuments, then the land includes seventeen acres. However, if one follows the distances that are listed as being between the monuments, the land includes 5.6 acres. The chancellor found the distances to be more consistent with the call of the deed which reads, "5½ acres, more or less." Furthermore, the chancellor relied on Jenkins's own testimony that from 1979 to 1997, where he stated that he was always under the impression he owned only five acres. The chancellor also relied on the property tax records, which indicated that Jenkins only paid property taxes on five acres. The chancellor held the clear intent of the drafting parties was to transfer only 5.6 acres.
¶ 17. As we set out in the previous issue, the chancellor went further to note that Terry Investments had a continuing objection of collateral estoppel and res judicata. Nevertheless, the chancellor overruled the objection to allow Jenkins a chance to prove his claim.
¶ 18. First, we consider whether Jenkins should have been allowed to renew his Rule 60 motion that we previously rejected in Jenkins II. Res judicata is a doctrine which protects the finality of judgments. It applies to final judgments on the merits. Anderson v. LaVere, 895 So.2d 828, 833 (¶ 10) (Miss.2004). Res judicata requires four elements: (1) identity of the subject matter, (2) identity of the cause of action, (3) identity of the parties, and (4) identity of the quality or character of a person against whom the claim is made. Norman v. Bucklew, 684 So.2d 1246, 1253 (Miss.1996). "If these four identities are present, the parties will be prevented from relitigating all issues tried in the prior lawsuit as well as all matters which should have been litigated and decided in the prior suit." Anderson, 895 So.2d at 832(¶ 10) (quoting Dunaway v. W.H. Hopper & Assocs., 422 So.2d 749, 751 (Miss.1982)).
¶ 19. Our opinion in Jenkins II was a final judgment on the merits. Jenkins did not ask for rehearing of our decision, and he did not request review by the supreme court.
*978 ¶ 20. First, Jenkins II involved a dispute over the same piece of property that is at issue here. Jenkins, 757 So.2d at 340(¶ 1). In both cases, Jenkins disputes the boundary line established by the 1994 partition judgment. Id. Thus, identity of the subject matter is satisfied.
¶ 21. Second, Jenkins II involved the same motion as was involved here, that is a Rule 60(b) motion to set aside the 1994 partition judgment. Id. Specifically, in the former case, Jenkins and his wife sought this relief, because they "claimed that their separate five acre tract, which was included in the survey, was actually 17 acres, thus 12 acres of their fee land was included in the land allotted to them in the partition." Id. at 342(¶ 4). That is the exact same basis for the latest motion. Thus, the identity of the cause of action is satisfied.
¶ 22. Third, Jenkins was the appellant in both cases. Id. at 340(¶ 1). However, the appellees named in the first case were Jesse's other heirs, and not Terry Investments. Id. at 341(¶ 2). However, all that is required to meet this identity is that the later party have at least been in privity with the first party. Williams v. Vintage Petroleum, Inc., 825 So.2d 685, 689(¶ 17) (Miss.Ct.App.2002). Successors in interest are in privity for purposes of res judicata. Id. Terry Investments was the successor in interest of Jesse's other heirs. Jenkins does not contest this fact. Terry Investments bought the property from Jesse's other heirs. Thus, there is an identity of parties.
¶ 23. Fourth, there is an identity of the quality and character of the party against whom res judicata is sought. Jenkins was a party in his individual capacity in both suits.
¶ 24. All the requirements for res judicata are met in this case. We find that it was error for the chancellor to allow Jenkins to reopen the 1994 partition judgment to try to have it set aside. However, this error was harmless since the chancellor affirmed the boundary line as determined in the 1994 partition judgment. Accordingly, we find no merit to this issue.
VI. Did the trial court err in questioning Jenkins on the stand?
¶ 25. The chancellor examined Jenkins while he was testifying at trial. Jenkins complains that "[i]n questioning [Jenkins], Judge Ward told [Jenkins] he could not explain himself. When [Jenkins] was questioning Edwin Smith, Judge Ward allowed Mr. Smith to ramble on and on without answering [Jenkins's] questions with yes or no." Terry Investments asserts that this has no merit "because it attacks questions asked by chancellor to appellant during the hearing." This is the literal extent of both parties' arguments under this issue.
¶ 26. Jenkins fails to cite relevant authority to support his allegation that this is error. It is the appellant's duty to cite relevant authority to support his assignment of error. Williams v. State, 708 So.2d 1358, 1361(¶ 12) (Miss.1998). This failure alleviates our duty to review this assignment of error. Id.
¶ 27. This procedural bar notwithstanding, Jenkins's argument is without merit for two reasons. First, the chancellor's questioning was restricted to Jenkins's Rule 60 evidence. As we stated previously, Jenkins was barred by res judicata and was not entitled to a trial on this evidence. Therefore any error, would be harmless.
¶ 28. Secondly, Jenkins misrepresents the record. The record shows that Jenkins was allowed to explain his answers to the court. There is nothing to indicate *979 that he was cut short or had anything left to say. We find no merit to this issue.

CONCLUSION
¶ 29. We find that res judicata barred Jenkins from relitigating his Rule 60 motion to reopen the 1994 partition judgment. Accordingly, we affirm the chancellor's judgment. In addition, we reluctantly offer a word of caution to Jenkins since he is a pro se litigant. The courts of this state have properly and finally addressed the issues that Jenkins continues to litigate. Should Jenkins file another lawsuit concerning these issues, we encourage Jenkins to read Rule 11(b) of the Mississippi Rules of Civil Procedure and fully understand the potential, or likely, consequences of such further frivolous litigation.
¶ 30. THE JUDGMENT OF THE CHANCERY COURT OF COPIAH COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, CHANDLER, BARNES, ISHEE AND ROBERTS, JJ., CONCUR. IRVING, J., NOT PARTICIPATING.